UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 9 2019

---

Gordon Springs,

         Plaintiff,

   –v–

City of New York, et al.,

         Defendants.

---

17-cv-451 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Firefighter Gordon Springs brings this action against New York City, the Commissioner

of the Fire Department of the State of New York, and four members of the New York City Fire

Department ("FDNY") alleging harassment, discrimination on the basis of race and sex, and

retaliation for engaging in protected activity. Before the Court are motions for summary

judgment filed by two groups of Defendants. For the reasons stated below, the motions are

DENIED in part and GRANTED in part.

I.     **Background**

   **A. Factual Background**

The following facts are undisputed except if specifically noted.

    **1. The Parties**

Plaintiff Gordon Springs is a firefighter employed by FDNY who identifies as "mixed

race." Dkt. No. 69 ¶¶ 1, 10; Dkt. No. 76-1 ¶ 2. After graduating from the Fire Academy in May

2015, Plaintiff was assigned to Ladder 35 Firehouse. Dkt. No. 69 ¶¶ 2, 4. Like all new

graduates, Plaintiff began his career at FDNY as a Probationary Firefighter. *Id.* ¶ 3.

Probationary firefighters are known as "Probies." *Id.*

Defendants Charles Swift and Peter Grillo were probationary firefighters at the Ladder 35 Firehouse when Plaintiff began work there. Dkt. No. 69 ¶ 5; Dkt. No. 76 ¶ 3. Defendant Pedro Aristy was also a firefighter at the Ladder 35 Firehouse at that time, but he was not a Probie. Defendant Edward Vreeland is a Lieutenant Firefighter who was present at the Ladder 35 Firehouse in June 2015. Dkt. No. 69 ¶¶ 23, 34. Defendant Daniel A. Nigro is the Commissioner of FDNY. *See* Dkt. No. 4 (Compl.). Plaintiff has also brought claims against the City of New York ("the City"). *See id.*

## 2. The May 4, 2015 Gym Incident

Plaintiff began work at the Ladder 35 Firehouse on May 4, 2015. Dkt. No. 69 ¶ 6. Three other Probies started at Ladder 35 on the same day—Anthony Manetta, Timothy Stack, and Ian Wilson. *Id.* Manetta and Stack are Caucasian and Wilson is black. *Id.* at ¶¶ 8–9. "The arrival of the Probies was announced over the firehouse PA system." *Id.* ¶ 7. On their first day at the firehouse, Plaintiff and the other Probies were given a tour. Dkt. No. 76 ¶ 5. Plaintiff testified that during the tour, Defendant Grillo told Plaintiff "our house is really gay." *Id.* ¶ 8. Grillo denies making this statement, and "[n]o one else present testified that they heard such a statement." *Id.* ¶¶ 10–11. Defendants Aristy, Swift, and Grillo were naked in the gym when the Probies arrived on their tour, along with one additional firefighter. *Id.* ¶¶ 15–16. Plaintiff testified that he was pushed into the gym by Defendant Grillo and that he attempted to leave but was unable to open the door. *Id.* ¶¶ 13–14; Dkt. No. 69 ¶ 17.

In the gym, Defendant Aristy instructed Plaintiff to lie down on a bench and begin lifting weights. Dkt. No. 69 ¶¶ 17–18. Aristy stood behind Plaintiff fully nude and placed his genitals on Plaintiff's face. Dkt. No. 76 ¶ 29; Dkt. No. 72, Ex. A at 102–103. Plaintiff testified that he

believed he had to follow Aristy's orders because Aristy was a "Senior Man,"—a firefighter with more experience. Dkt. No. 72, Ex. A at 103–05. Plaintiff had been advised to always listen to a "Senior Man." *Id.* at 87–88. The other firefighters in the gym likewise listened to Aristy's orders during the incident. *Id.* After a short time, the naked firefighters got dressed. Dkt. No. 76 ¶¶ 31–32. "The firefighters involved in the gym incident as well as others had heard about such a prank having been done in the past," but there is no evidence in the record that such a prank had actually occurred. Dkt. No. 76 ¶ 22. Plaintiff testified that after this incident, Aristy told him "I know you like my balls in your mouth" on two separate occasions. Dkt. No. 72, Ex. A at 123. Plaintiff did not inform an officer about the incident, and states that Aristy told him "I could punch you in your face and there is nothing you could do about it[,] and everyone will keep their mouth shut[,] and after everyone realizes you just called [the Equal Employment Opportunity "EEO" Office], the real fun will begin." *Id.*

### 3. The June 29, 2015 "Bucketing" Incident

On June 29, 2015, Defendant Grillo told Plaintiff that he and Probies Stack and Wilson were going to do the "pole hole drill" or "pole hole challenge," in which Probies had to climb the pole inside the firehouse. Dkt. No. 76 ¶ 48. Two non-Defendant firefighters were at the top of the hole directing the Probies and pouring water on them, a practice called "bucketing." *Id.* "Bucketing" is a practice prohibited by the FDNY's anti-hazing and anti-bullying policies, and Plaintiff testified that it is not normally done while Probies are on the fire pole. *Id.* ¶ 66. Stack and Wilson each took turns climbing up and down the pole while water was poured on them. Dkt. No. 76 ¶ 53; Dkt. No. 69 ¶ 25. Plaintiff was the last of the three to climb the pole. Dkt. No. 69 ¶ 25–26. Plaintiff testified that his experience was different from Stack and Wilson's in several respects: (1) Defendant Grillo held the door closed during his turn, whereas it had been

open before; (2) Plaintiff was hit with much more water than the other Probies and only once he had reached the very top of the pole; (3) Plaintiff also had breadcrumbs dumped on him; (4) the light went out while Plaintiff was on the pole. Dkt. No. 72, Ex. A at 146. Plaintiff fell off the pole and sustained an injury. *Id.* Plaintiff testified that he was specifically targeted, but he did not hear any comments about his race or sex during the incident.

At some time following the incident, Lieutenant Vreeland asked Plaintiff why he was limping. *Id.* at 151–53. Initially, another firefighter provided a false reason for the accident. *Id.* Later, Plaintiff told Vreeland about the pole hole incident, and Vreeland advised him not to "tap out"—i.e., not to take medical leave. *Id.* "Plaintiff then proceeded to "make a mark (file an incident report) regarding the pole hole incident. Dkt. No. 76 ¶ 74. According to Plaintiff, Vreeland prepared a false account of the cause of the injury to include in the report. Dkt. No. 72, Ex. A at 152–53. Plaintiff took approximately six months of medical leave in 2015 after he fell from the pole. Dkt. No. 69 ¶ 40.

### 4. EEO Complaints

On October 1, 2015, while on medical leave, Plaintiff filed EEO complaints regarding the gym incident and the bucketing incident. Dkt. No. 69 ¶ 42. The matter was referred to the FDNY Bureau of Investigations and Trial ("BITS"), which investigated the incidents and ultimately served Aristy, Grillo, and Swift with disciplinary charges. Dkt. No. 69 ¶¶ 44–46. All three firefighters stipulated to a penalty of lost pay and a period of probation. *Id.* When Plaintiff returned from medical leave, he was detailed to Ladder 40, though he had requested to return to Ladder 35. Dkt. No. 69 ¶¶ 73, 75. Plaintiff states that involuntary details have a negative perception among firefighters.

A Department Order concerning the investigation was issued and circulated at firehouses.

4

Dkt. No. 69 ¶ 48. The Order asked members of FDNY to review and comply with their anti-hazing policy. Dkt. No. 69 ¶¶ 48–49. Though Plaintiff was not named in the report, he states that it was easy for the other firefighters to assess based on context that he was the victim of the incidents, and other firefighters told him that they knew he had made the complaints. Dkt. No. 69 ¶ 51; Dkt. No. 72, Ex. A at 188–89. A highlighted copy of the Order was tacked on the board in the kitchen in Plaintiff's new firehouse, and he was told it was to "remind guys to be careful around [him]." Dkt. No. 72, Ex. A at 188–89.

### 5. Other Alleged Incidents of Harassment and Retaliation

#### i. *Race Related Comments*

When Defendant Grillo first worked with Plaintiff, he asked Plaintiff what nationality he was. Dkt. No. 71, Ex. C at 76. In May 2015, his first month on the job, Plaintiff states that Aristy told him "[I] don't like blacks getting on the job this way." Plaintiff also testified that Aristy referred to him as a "mixed bag of shit" on multiple occasions. Dkt. No. 72, Ex. A at 218. In addition, other firefighters asked him "what are you[,] black." *Id.* at 137. "The plaintiff admitted that the only person that made a derogatory remark about his race was Aristy." Dkt. No. 76 ¶ 38.

#### ii. *Mutuals*

"A mutual is an exchange of shifts between firefighters." Dkt. No. 69 ¶ 88. While doing a mutual with another firefighter is not required, it is a common practice and is permitted by FDNY leaders. *Id.* ¶¶ 89–91. Plaintiff testified that other firefighters categorically refused to do mutuals with him, including Defendant Swift. *Id.* ¶¶ 93–94.

#### iii. *Details to Other Firehouses*

Plaintiff was detailed to Ladder 40 after returning from medical leave in early 2016. Dkt.

No. 69 ¶¶ 75–76. In approximately July 2016, Plaintiff was transferred to Engine 21. *Id.* ¶ 77. Plaintiff was subsequently transferred to Engine 67. *Id.* ¶ 78. Plaintiff has made numerous requests to return to Ladder 35. *Id.* ¶ 79.

### iv. Further Incidents

In February 2016, Plaintiff went to Ladder 35 Firehouse to retrieve his uniform and discovered that the uniform had been "stabbed and/or desecrated." *Id.* ¶¶ 57–58. Plaintiff reported this incident to a lieutenant at Ladder 35. Dkt. No. 69 ¶ 59. Though BITS investigated the incident, Plaintiff states that he was not taken seriously, and it was suggested that the damage was regular wear and tear. *Id.* ¶ 61.

While he was stationed at Ladder 21, Plaintiff found screws in his boots, which had been left on the first floor of the firehouse. *Id.* ¶ 63. Plaintiff noticed the screws when he put the boots on to respond to a call, but stated that he was concerned about taking time during the call to remove them and suffered a foot injury as a result. *Id.* ¶ 64. Plaintiff testified that he told a fellow firefighter about the screws, and that firefighter found the incident funny. Dkt. No. 72, Ex. A at 56. Following the call, Plaintiff informed an officer he had found screws in his boots, and subsequently went on medical leave. Dkt. No. 69 ¶¶ 69–71.

Other incidents occurred at Ladder 21. On one occasion, Plaintiff's mattress disappeared. Dkt. No. 69 ¶ 116. Around the same time, Plaintiff noticed that the couplings of his air mask nozzle had been loosened. *Id.* at ¶ 118.

## B. Procedural Background

Plaintiff filed this action on January 20, 2017, alleging harassment, discrimination, and retaliation in violation of Title VII, 42 U.S.C. §§ 1981, 1983, 1985, and 1986; the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"),

and common law assault and battery. *See* Dkt. No. 1. Defendants City of New York, Vreeland, and Nigro ("City Defendants") filed an answer on June 21, 2017. Dkt. No. 19. Defendant Aristy filed an answer on July 11, 2017. Dkt. No. 29. Defendants Grillo and Swift ("Individual Defendants") filed an answer on July 20, 2017. Dkt. No. 32.

On July 27, 2018, City Defendants and Individual Defendants ("Moving Defendants") each filed a motion for summary judgment. Dkt. Nos. 55; 58. These motions are now fully briefed and ripe for consideration. Defendant Aristy has not moved for summary judgment.

## II.    Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that it is entitled to relief as a matter of law. *Vt. Teddy Bear*

7

*Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In doing so, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Matsushita Elec. Indus.*, 475 U.S. at 586 (1986); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions[, n]onetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (citations omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## III. Discussion

### A. Liability of Defendants Nigro and Vreeland

City Defendants have moved for summary judgment in favor of Defendants Nigro and Vreeland on the ground that they are entitled to qualified immunity. "The doctrine of qualified

immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). However, the Court need not reach the question of whether Nigro or Vreeland's conduct violated clearly established rights because there is "an absence of evidence" that either committed any violation. *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (noting that summary judgment is appropriate if there is "an absence of evidence to support an essential element of the non-moving party's case") (brackets and internal quotation marks omitted).

Plaintiff makes no factual allegations regarding Nigro, nor does he submit any evidence concerning Nigro's role in the alleged constitutional violations. *See generally* Compl. As a result, there is no possibility that Plaintiff will be able to demonstrate that Nigro's conduct violated a constitutional or statutory right, and the claims against Nigro fail as a matter of law.

As for Vreeland, Plaintiff does make specific factual allegations about one occurrence: Plaintiff alleges that Vreeland knew the truth about the bucketing incident, but instructed Plaintiff to fill out a false injury report and failed to "take any measures to prevent such further actions against the Plaintiff." Dkt. No. 68 at 19. Based on these facts, Plaintiff brings a claim of individual supervisory liability against Vreeland under § 1983. *See* Compl., at 30. City Defendants argue that these allegations, even if proven, are insufficient to show that Vreeland violated a clearly established statutory or constitutional right. *See* Dkt. No. 56 at 27–28. The Court agrees with City Defendants.

It is well settled that vicarious liability is inapplicable to § 1983 suits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* The

Second Circuit has held that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). But even if Plaintiff can show personal involvement through one of these methods, he must also demonstrate that "a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic such as sex." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014)

This Plaintiff cannot do with respect to Vreeland. Even interpreting the evidence in the record in the light most favorable to Plaintiff, no reasonable juror could find that Defendant Vreeland's actions constituted intentional discrimination on the basis of Plaintiff's sex or race. *See Raspardo*, 770 F.3d at 116. Plaintiff points to no evidence in the record to suggest that Vreeland drafted Plaintiff's injury report to avoid mention of the bucketing incident *because of* Plaintiff's race or sex. Notably, Plaintiff does not allege that he told Vreeland that he was targeted during the bucketing because of his membership in a protected class. Nor is there any evidence in the record to suggest that Vreeland knew about the earlier incident in which Plaintiff was sexually assaulted. Accordingly, Vreeland is entitled to summary judgment on Plaintiff's § 1983 claim of supervisory liability.

To the extent that Plaintiff has pled additional statutory claims against Vreeland, the record is utterly devoid of evidence that would allow a jury to find liability under the NYSHRL or NYCHRL. Even if proven, the fact that Vreeland "covered up" the bucketing incident is

insufficient because Plaintiff points to no evidence—and indeed makes no allegation—that Vreeland knew Plaintiff had been targeted on the basis or race, sex, or protected activity. It is not enough for Plaintiff to conclusorily state that "Vreeland discriminated against Plaintiff under both the NYSHRL and the NYCHRL." Dkt. No. 68 at 29; *see Brown*, 654 F.3d at 358 (stating that the non-moving part "may not rely on conclusory allegations or unsubstantiated speculation" to preclude summary judgment). Because Plaintiff fails to even argue that Vreeland has participated in any discriminatory or retaliatory act, no reasonable juror could find him liable, and summary judgment is warranted.

## B. *Monell* Liability

The City Defendants move for summary judgment on Plaintiff's § 1983 claims against the City of New York. Dkt. No. 56 at 24–27. Under *Monell v. Dep't of Social Services of NYC*, 436 U.S. 658 (1978), a municipality can be held liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. In general, a Plaintiff seeking to hold a city liable must demonstrate that the deprivation of his rights under federal law was caused "by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). In other words, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691 (emphasis original). Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. v. Tuttle*, 471 U.S. 808, 823–24, (1985) (plurality opinion).

Plaintiff argues that the City can be held liable under *Monell* for having "failed properly to train and supervise their officers regarding discrimination…." Dkt. No. 68 at 35. It is true

that, in some circumstances, a city can be held liable under § 1983 "for inadequate training [or supervision] of its employees." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). However, *Monell* liability is available under this theory "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Id.* "[D]eliberate indifference is a stringent standard of fault, and necessarily depends on a careful assessment of the facts at issue in a particular case." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir.2011) (citations and internal quotation marks omitted).

There are three requirements to determine whether a "failure to train or supervise constitutes deliberate indifference." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).

> The plaintiff must show "[ (1) ] that [the] policymaker knows to a moral certainty that her employees will confront a given situation ... [,] [ (2) ] that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation ... [,] [and] [ (3) ] that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."

*Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 638 (S.D.N.Y. 2015) (quoting *Jenkins*, 478 F.3d at 94). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted). If the City did, in fact, have a training program in place, the plaintiff faces the additional requirement of "identify[ing] a specific deficiency in the [C]ity's training program and establish[ing] that the deficiency is closely related to the ultimate injury such that it actually caused the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton*, 489 U.S. at 391).

Even drawing all inferences in favor of the Plaintiff, the evidence in the record does not

raise any genuine dispute of fact as to whether the City acted with deliberate indifference.

Plaintiff concedes that FDNY firefighters undergo anti-discrimination training. Dkt. No. 68 at

35. "The FDNY has Anti-Hazing, Anti-Retaliation and Anti-Discrimination policies, as well as

Equal Opportunity policies and handbooks." Dkt. No. 69 ¶ 54. Plaintiff also admits that he was

aware of the EEO Complaint process and did in fact file multiple complaints. Dkt. No. 69 ¶¶ 53,

103. Plaintiff offers no non-conclusory evidence that the City was deliberately indifferent to the

need for additional or different anti-discrimination training. Instead, he argues without citation

to the record that "most of the Defendants cannot even recall the training they received."

Plaintiff also argues that "FDNY training mandated that Officers supervise their own

firehouses," which he contends the Officers fail to do, leading to the incidents described in his

Complaint. Dkt. No. 68 at 35. But this allegation, without more, is not enough to raise an

inference that the City was deliberately indifferent to a deficiency in its training regarding officer

supervision. Based on these facts, no reasonable juror could conclude that "the need for more or

different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The Court grants

summary judgment in favor of Defendant New York City on Plaintiff's § 1983 claims.

### C.  § 1981 Claims

Section 1981 guarantees, in relevant part, that "[a]ll persons within the jurisdiction of the

United States shall have the same right in every State . . . to make and enforce contracts, . . . and

to the full and equal benefit of all law and proceedings for the security of persons and property as

is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Second Circuit has held that "§ 1981

does not provide a separate private right of action against state actors." *Duplan v. City of New*

*York*, 888 F.3d 612, 621 (2018). Accordingly, all of Plaintiff's race discrimination claims must be brought under § 1983, which provides "the exclusive remedy for violations [by state actors] of rights guaranteed under Section 1981." *Ruiz v. City of New York*, No. 14-CV-5231 (VEC) 2015 WL 5146629 at *3 (S.D.N.Y. Sept. 2, 2015); *see also Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) (summary order) ("[Plaintiff's] § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983."). Plaintiff's § 1981 claims are accordingly analyzed under § 1983 only.

### D. § 1985 and § 1986 Claims

Moving Defendants move for summary judgment on Counts 18 and 19 of Plaintiff's complaint, which bring claims under 42 U.S.C. §§ 1985 and 1986. To state a civil rights conspiracy under §1985(3), a plaintiff must allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir.) (citing *United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825 (1983). The conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999) (internal quotation marks and citation omitted)). Section 1986 provides a cause of action against those who "hav[e] knowledge" of a §1985 conspiracy and "neglect[] or refuse[]" to prevent or aid in preventing its commission, despite having the power to do so. 42 U.S.C § 1986. Claims under § 1986 "must be predicated on a valid § 1985 claim." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir.

2000).

Though Plaintiff cites to these statutory provisions in his complaint, he alleges no facts in support of either claim. *See* Compl. at 36–37. Nor does Plaintiff dispute Defendants' arguments that he has "proffered no evidence[] to establish the existence of a conspiracy to interfere with his rights." Dkt. No. 56 at 29; *see also* Dkt. No. 61 at 23 ("[N]owhere in the complaint does the plaintiff substantiate his [§ 1985] claim with any factual allegations. He simply states that a conspiracy existed."). Accordingly, Defendants have met their burden by pointing to a lack of evidence for Plaintiff's § 1985 claim. *See Cordiano*, 575 F.3d at 204. And, because a §1986 claim cannot survive without a corresponding § 1985 claim, Moving Defendants are also entitled to summary judgment on Count 19 of the Complaint.

## E. § 1983, Title VII, and NYSHRL Claims

### 1. Discrimination

To analyze a claim of employment discrimination under either § 1983, Title VII, or the NYSHRL courts apply the three-step burden shifting analysis outlined in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under the *McDonnell Douglas* framework, the first burden is on the plaintiff to establish a *prima facie* case by demonstrating (1) 'membership in a protected class'; (2) 'qualification for the position'; (3) 'adverse employment action'; and (4) 'circumstances giving rise to an inference of discrimination.'" *Johnson v. New York City Dep't of Educ.*, 633 F. App'x 42, 43 (2d Cir. 2016) (summary order) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000) (superseded on other grounds)); *see also Stephenson v. Hotel Emp. & Rest. Emp. Union*, 6 N.Y. 3d 265, 270–71 (N.Y. 2006) (applying the *McDonnell Douglas* framework to NYSHRL claims).

Once a *prima facie* case is established "the burden then shifts to the defendant to provide

'a legitimate, non-discriminatory reason' for his or her actions." *Johnson*, 633 F. App'x at 43

(quoting *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). If the defendant makes this

showing, the burden shifts back to the plaintiff to show "that a reasonable jury could conclude

that the employer's determination was in fact the result of discrimination." *Ghent v. Moore*, 324

F. App'x 55, 56 (2d Cir. 2009) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008)).

At this step, courts consider evidence including "the strength of the plaintiff's prima facie case,"

as well as "the probative value of the proof that the employer's explanation is false, and any

other evidence that supports [or undermines] the employer's case." *James v. New York Racing*

*Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 149–50 (2000)) (internal quotation marks omitted; alterations in original).

Plaintiff's discrimination claims fail at the first step because he has not pointed to any

"circumstances giving rise to an inference of discrimination" on the basis of either race or sex.

*Cruz*, 202 F.3d at 567. To establish his *prima facie* case for discrimination, Plaintiff points to

four adverse employment actions: (1) the bucketing incident and subsequent "mark," (2) being

placed on "light duty," (3) being "detailed" to other firehouses; and (4) other firefighters' refusal

to perform "mutuals" with Plaintiff. Dkt. No. 68 at 11–14. But even assuming that these

incidents could constitute adverse employment actions, Plaintiff has failed to point to any

evidence that any of the four was motivated by his race or sex. In support of his argument for

discriminatory intent, Plaintiff notes that "more favorable treatment of employees not in the

protected group, 'invidious comments about the employee's protected group, and the overall

sequence of events" are circumstances that can give rise to inferences of discriminatory intent.

Dkt. No. 68 at 15. But Plaintiff fails to point to any such circumstances in the record. Of course,

there is evidence that Defendant Aristy made derogatory comments about Plaintiff's race, but

Plaintiff does not allege that Aristy was in any way connected to the four actions he cites as adverse. Plaintiff has therefore offered no "concrete evidence from which a reasonable juror could return a verdict in his favor." *Liberty Lobby*, 477 U.S. at 256. Moving Defendants are entitled to summary judgment on Plantiff's Title VII, § 1983, and NYSHRL discrimination claims.

## 2. Retaliation

Retaliation claims under Title VII, § 1983, and the NYSHRL are also analyzed under the three-step *McDonnell Douglas* framework. *See, e.g.*, *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). To establish a *prima facie* case for retaliation, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). Any action that "protests or opposes statutorily prohibited discrimination" constitutes a protected activity. *Cruz*, 202 F.3d at 566. This includes "informal complaints to supervisors" in addition to the filing of formal complaints or lawsuits. *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F.Supp.3d 396, 401 (S.D.N.Y.2014). In the retaliation context, an adverse employment action is any "that a reasonable employee would have found…materially adverse," meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (U.S. 2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

Plaintiff points to a litany of actions as possible adverse employment actions taken in retaliation for his protected activity. Specifically, Plaintiff cites: (1) the physical threats and actual violence of Defendant Aristy; (2) having the nozzle on his mask loosened; (3) having his

uniform defaced; (4) having officers refuse to do mutuals with him; (5) the public posting of the Department Order that discussed Plaintiff's complaint; (6) vandalization of his locker; (9) the screws placed in his boots. *See* Dkt. No. 76 ¶ 83.

### i. City Liability

City Defendants argue that "none of these acts qualify as an adverse employment action." Dkt. No. 56. The Court disagrees. "An employee could suffer a materially adverse change in the terms and conditions of [his] employment if [his] employer knew about but failed to take appropriately remedial action to abate retaliatory harassment inflicted by co-workers." *Richardson v. N.Y. State Dept. of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999); *see also Brown v. N.Y. State Dept. of Correctional Serv.*, 583 F.Supp.2d 404, 421 (W.D.N.Y. 2008) (finding genuine issues of material fact as to retaliation claim when plaintiff "alleges that he complained several times about his coworkers' retaliatory harassment of him, and that nothing was done to remedy the problem"). Plaintiff asserts that after he complained about the gym and the bucketing incidents, he experienced a persistent campaign of harassment at the hands of his fellow firefighters. Drawing all factual inferences in Plaintiff's favor, the record indicates that his work jacket was defaced, his mattress disappeared, the nozzles on his mask were loosened, screws were put in his shoes, a report that resulted from his complaints was publicly displayed, and his fellow firefighters uniformly refused to extend the common workplace courtesy of exchanging shifts to him. Moreover, Plaintiff testified that he reported these incidents to his supervisors, but they were insufficiently addressed. Accordingly, a rational juror could conclude that Plaintiff experienced "unchecked retaliatory co-worker harassment...sufficiently severe" to satisfy the third prong of a *prima facie* case for retaliation.[1] *See Richardson*, 180 F.3d at 446

---

[1] In addition, courts in this Circuit have held that an involuntary transfer may constitute an adverse employment

(evidence that plaintiff was the target of abusive treatment from her co-workers "includ[ing] manure in her parking space, hair in her food, a rubber band shot at her, and scratches on her car" was sufficient to state a *prima facie* claim of retaliatory harassment).

City Defendants also argue that Plaintiff failed to establish the fourth prong –a causal connection between the protected activity and the acts of retaliation. *See* Dkt. No. 56 at 17. A causal connection can be "established either through direct evidence of retaliatory animus, or by circumstantial evidence." *Sclafani v. PC Richard & Son*, 668 F.Supp.2d 423, 436 (E.D.N.Y. 2009). "Where there is no evidence of retaliatory animus or a showing of disparate treatment of fellow employees who engaged in the same conduct, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by retaliatory action." *Id.* (citing *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). City Defendants contend that Plaintiff has not shown sufficient temporal proximity to suggest a connection, noting that "the first mentioned alleged act of retaliation was in February 2016, more than four months after he filed his EEO complaints, when he returned to Ladder 35 to retrieve his uniform and discovered that it was damaged." Dkt. No. 56 at 17. However, this argument ignores the fact that Plaintiff was on sick leave from the time he filed his complaints in October 2015 until he returned to pick up the jacket. If anything, the fact that it was damaged during this period, when the BITS Investigation was presumably ongoing, gives rise to an inference of retaliatory animus.

Moreover, Plaintiff can point to sufficient other evidence in the record from which a jury could conclude that the harassment he experienced was connected to his complaints. Notably,

---

action in some circumstances. *See, e.g., Williams v. City of New York*, No. 99 CV 2697(ARR)(LB), 2006 WL 2668211, at *21 (E.D.N.Y. Sept. 11, 2006). It is undisputed that Plaintiff was transferred to three different firehouses in the period following his EEO complaints.

one of the alleged acts of retaliation was the posting of highlighted version of a Department Order that resulted from the EEO complaints at Engine 21, where he was transferred after Ladder 35. Plaintiff testified the firefighters at that station were aware that he was the victim of the incidents, that public posting of such orders was not the usual practice, and that he was told it was posted "to remind guys to be careful around [him]." During his time at Engine 21, Plaintiff also discovered the screws, had his mattress disappear, and noticed that the nozzles on his air mask had been loosened. If these facts are proven, a reasonable jury could conclude that these actions were caused at least in part by Plaintiff's protected complaints.

City Defendants have not articulated a non-retaliatory explanation for the incidents Plaintiff experienced. Accordingly, City Defendants' motion for summary judgment as to Plaintiff's Title VII and NYSHRL retaliation claims are denied. *See Sclafani*, 668 F. Supp. 2d at 444 ("In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is 'to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'") (quoting *Jute*, 420 F.3d at 173 (2d Cir.)).

### ii. *Individual Liability*

As for Individual Defendants, they argue that they are entitled to summary judgment on Plaintiff's § 1983 claims and NYSHRL claims[2] because Plaintiff has not alleged that they were personally involved in the retaliatory acts. *See Littlejohn*, 795 F.3d 297, 314 (2d Cir. 2015) ("An individual may be held liable under [Section 1983] only if that individual is personally involved in the alleged deprivation.") (internal quotation marks and citations omitted); *Torres v. N.Y.*

---

[2] Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)). Plaintiff has brought claims under Title VII against the City only. *See* Dkt. No. 4 at 21–22.

*Methodist Hosp.*, No.15 CV 1264 (PKC) (PK), 2016 U.S. Dist. LEXIS 2365, at *38 (E.D.N.Y.

Jan. 7, 2016) (noting that individual liability under the NYSHRL is limited to cases in which "an

individual defendant . . . actually participates in the conduct giving rise to the plaintiff's

retaliation claim"). Plaintiff counters that Individual Defendants were personally involved in

certain acts taken in retaliation for his initial discussion with Defendant Aristy about the gym

incident, in which Aristy threatened him. However, even assuming that this conversation

constitutes an informal complaint that is protected activity, Plaintiff has pointed to no evidence

to suggest that Individual Defendants were actually aware of the conversation. *See Jute*, 420

F.3d at 173 (requiring an allegation that defendant had knowledge of the protected activity in

order to make out a claim for retaliation). Accordingly, because the events in which Individual

Defendants participated occurred prior to Plaintiff's filing of the EEO complaints, the Court

agrees with Individual Defendants that he has failed to identify any evidence in the record from

which a jury could conclude that they were personally involved in any adverse employment

actions. The Court therefore enters summary judgment in favor of Individual Defendants on

Plaintiff's § 1983 and NYSHRL retaliation claims.

### 3. Hostile Work Environment

#### i. *Hostile Environment under Title VII and NYSHRL*

To survive summary judgment on his hostile work environment claims under Title VII

and the NYSHRL, Plaintiff must demonstrate that a rational trier of fact could find that "the

complained of conduct (1) is objectively severe or pervasive—that is, creates an environment

that a reasonable person would find hostile or abusive; (2) creates an environment that the

plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment

because of the plaintiff's sex [or race]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)

21

(internal quotation marks and punctuation omitted) (citing *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)). The Court must consider the "totality of the circumstances" when evaluating a hostile work environment claim, including "the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably affected the employee's job performance." *Burhans v. Lopez*, 24 F. Supp. 3d 375, 380 (S.D.N.Y. 2014).

Moving Defendants argue that Plaintiff has not established either that the conduct was sufficiently severe or that the conduct occurred "because of, not incidental to, the protected characteristic." Dkt. No. 56 (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). Plaintiff responds that the gym incident and the surrounding circumstances qualify as sufficiently serious. *See* Dkt. No. 68 at 17–18. Indeed, the Second Circuit has acknowledged that "a single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir.2004); *see also Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) ("Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious.").

The Court agrees with Plaintiff that the gym incident was sufficiently severe to allow a jury to conclude that the work environment was abusive. The Second Circuit has noted that direct contact with an intimate body part like the incident in question "constitutes one of the most severe forms of sexual harassment." *Redd v. New York Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012). Indeed, courts have previously held that "[a] single incident of contact with an intimate body part is sufficient to establish a hostile work environment claim." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 656 (E.D.N.Y. 2015) (citing *Reid v. Ingerman Smith LLP*, 876 F.Supp.2d 176, 185 (E.D.N.Y. 2012)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d

Cir. 1995) ("Even a single incident of sexual assault sufficiently alters the conditions of employment and clearly creates an abusive work environment for purposes of Title VII liability.") (abrogated on other grounds). Moreover, the totality of the circumstances in this case aggravate the severity of the incident: Plaintiff was assaulted on his first day of work as a firefighter in front of his peers and as-yet unknown colleagues. Accordingly, a rational jury could find that Plaintiff's workplace was "actionably hostile." *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F.Supp.2d 575, 605–07 (S.D.N.Y. Sept. 30, 2010).

Plaintiff also argues that there is evidence in the record to support an inference that he would not have faced such treatment if not for his sex. Specifically, he points to the sexual nature of the incident, Defendant Grillo's statement that "our house is really gay," and the fact that Defendant Aristy said to him "I know you like my balls in your mouth" on multiple occasions. Dkt. No. 68 at 17–18. Moving Defendants contend that this is not sufficient to establish a link between the gym incident and his male status. *See* Dkt. No. 56 at 21; Dkt. No. 61 at 21.

The Court concludes that there is a triable issue of fact as to whether the abusive conduct was motivated by Plaintiff's sex. It is well established that same-sex harassment claims are cognizable under Title VII and the NYSHRL. *See, e.g.*, *Barrows v. Seneca Foods Corp.*, 512 Fed. Appx. 115, 117 (2d Cir. 2013). The Supreme Court has outlined three examples of evidence that could demonstrate that a plaintiff suffered discrimination because of his sex in such circumstances:

> (1) the harasser is homosexual (and, therefore, presumably motivated by sexual desire); (2) a victim is "harassed in such sex-specific and derogatory terms by [someone of the same gender] as to make it clear that the harasser is motivated by general hostility to the presence of [someone of the same gender] in the workplace"; or (3) there is "direct

23

comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

Barrows, 512 F. App'x at 117 (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 79–81). This is not an exhaustive list; so long as Plaintiff can "prove that the conduct at issue was not merely tinged with offensive sexual connotations but actually constituted discrimination because of sex," he can support his claim. *Oncale*, 523 U.S. at 81. In light of the evidence in the record, a reasonable juror could find that Defendant Aristy's conduct was motivated by Plaintiff's sex. The very nature of the act in question, as well as the sexually-explicit comments, suggest that Plaintiff would not have been subject to the same treatment if he were a woman. *Cf. Hoit v. Capital District Trans. Authority*, No. 1:15-CV-0134 (GTS/CFH) 2016 WL 3947613 (N.D.N.Y. July 19, 2016) (concluding that a same sex assault involving "tea-bagging" was motivated by plaintiff's gender). Of course, a juror could also find that the gym incident and associated comments were offensive but non-discriminatory, but the Court cannot conclude as a matter of law that this is so.

On the other hand, the Court is not convinced by Plaintiff's argument that he has also made out a *prima facie* case for hostile work environment based on race. The only evidence in the record to support such a claim is testimony regarding (1) Defendant Aristy's isolated racially derogatory comments; and (2) questions Plaintiff received about his race or national origin. No reasonable juror could find on the basis of these comments alone that Plaintiff's workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (quoting *Alfano*, 708 F.3d at 373–74).

*i.    City Liability under Title VII and NYSHRL*

24

To succeed on his Title VII and NYSHRL hostile work environment claims against the City, Plaintiff must show not just that a hostile environment exists, but also that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 452 (E.D.N.Y. 2011) (internal quotations omitted); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). If the alleged harasser is in a "supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer" unless the employer can prove by a preponderance of the evidence that it is protected by the *Faragher/Ellerth* defense. *Gorzynscki*, 596 F.3d at 103. The *Faragher/Ellerth* defense consists of two elements: (1) that "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

On the other hand, an employer is only liable for a hostile work environment created by non-supervisory co-workers if the employer "knew or reasonably should have known about harassment by non-supervisory co-workers, yet failed to take appropriate remedial action." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014). "The appropriateness of an employer's remedial action must 'be assessed from the totality of the circumstances.'" *Id.* (quoting *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998)).

Plaintiff argues that, though Defendant Aristy was not an officer, he nevertheless exercised supervisory authority as one of the "Senior Men," occupying a position of power in the firehouse hierarchy. However, the Court is not convinced that Aristy was a supervisor for

25

purposes of Title VII liability because Plaintiff has pointed to nothing in the record to indicate that he was empowered "to take tangible employment actions" against Plaintiff. *See Bethea*, 2014 U.S. Dist. LEXIS 80945, 2014 WL 2616897, at *6 ("A 'tangible employment action' involves a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (quoting *Ellerth*, 524 U.S. at 761). It is not enough that Aristy was "higher ranked" than Plaintiff and could direct Probies in firehouse tasks, *see* Dkt. No. 68 at 20, unless he also had the authority to materially change Plaintiff's employment status, which Plaintiff does not allege, let alone support with admissible evidence.

Thus, Plaintiff must point to facts suggesting that the City was negligent in preventing the harassment. For example, if Plaintiff can introduce evidence that the City "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed," it could be held liable for the harassment. *Vance v. Ball State Univ.*, 570 U.S. 421, 449 (2013). Plaintiff argues that the City should have been on notice about the risk of harassment because firefighters testified that pranks involving naked employees greeting Probies during their welcome tour had occurred in the past, but officers nonetheless failed to accompany the Probie tour, despite their obligation to supervise the firehouse. *See* Dkt. No. 56 at 12. Plaintiff also notes that there were "no cameras situated anywhere in the firehouse." This is not a sufficient showing to raise a genuine issue of fact as to whether the City "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. New York University College of Dentistry*, 57 F.3d at 249 (internal quotation marks omitted). First of all, there is no evidence in the record to suggest a pattern of previous pranks involving sexual contact; there is therefore insufficient evidence to

suggest that the City was on notice of the risk of harassment. The mere fact that the City could have increased supervision or installed cameras to prevent the incident had it known it would occur does not, without more, imply negligence, nor does Plaintiff cite any case finding an employer negligent in similar circumstances. There is no genuine issue of material fact as to the City's negligence.

Plaintiff also argues that the City can be held liable under the "cat's paw" theory described in *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011). Under *Staub*, an employer can be liable if a supervisor "performs an act motivated by [discriminatory] animus that is intended to cause an adverse employment action, and…that act is a proximate cause of the ultimate employment action." *Id.* at 422. Plaintiff does not point to a specific employment action that he alleges was the intentional result of Aristy's anti-male discriminatory harassment, and therefore this theory is inapplicable.

City Defendants are therefore entitled to summary judgment on Plaintiff's Title VII and NYSHRL hostile work environment claims.

ii.    *§ 1983 Sexual Harassment Claim against Individual Defendants*

The Second Circuit has held that claims of sexual or race-based workplace harassment are cognizable under § 1983 as claims for the denial of equal protection. *See, e.g., Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144 (2d Cir. 1993) ("Sexual harassment of women constitutes disparate treatment because of gender and is actionable under Section 1983."). "To establish a hostile work environment claim under Section 1983, a plaintiff must demonstrate that (1) [he] was intentionally harassed; (2) the harassment was based on [his] race or gender; (3) such actions were taken under color of state law; and (4) the harassment was so severe as to render the work environment hostile to [him]." *Kennedy v. New York*, 167 F. Supp. 3d 451, 460 (W.D.N.Y.

27

2016) (quoting *Rodriguez v. City of New York*, 644 F.Supp.2d 168, 199 (E.D.N.Y.2008)). With the exception of the third requirement, these elements are "generally the same" as the elements of an analogous claim under Title VII. *Feingold*, 366 F.3d at 159 (citing *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)).

"In a case charging hostile environment . . . harassment, 'under color of state law' ordinarily requires that the harasser be a supervisor or have some position of authority or control over the plaintiff." *Galvez v. Means*, No. 95 Civ. 9479 (MBM), 1996 WL 487962, *3 (S.D.N.Y. Aug. 27, 1996) (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992)). This is because "[o]therwise, it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act of sexual harassment." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1996); *see also Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999).

The Court concludes that Individual Defendants in this case were not Plaintiff's supervisors, and therefore cannot be held liable for harassment under § 1983. Indeed, unlike for Defendant Aristy, Plaintiff does not advance an argument that Defendants Grillo and Swift were "Senior Men" who held positions of authority. The record reflects that they, like Plaintiff, were Probies at the time of the incident. Accordingly, Plaintiff has not raised a genuine issue of material fact as to whether Individual Defendants were acting under color of state law when they participated in the gym incident. The Court grants summary judgment for Individual Defendants on Plaintiff's § 1983 claim for disparate treatment.

### F. NYCHRL Claims

Because the NYCHRL's provisions are to be construed broadly in favor of discrimination plaintiffs, courts "must analyze NYCHRL claims separately and independently from any federal

and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Id.* "[S]ummary judgment is still appropriate in NYCHRL cases, but only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." *Id.* at 113.

### 1. Discrimination and Hostile Work Environment

Unlike under state and federal law, under NYCHRL a plaintiff need not demonstrate material adversity to support a claim for discrimination. *See Margherita v. FedEx Exp.,* No. 07 CV 4826 (NG)(RER), 2011 WL 5024577, at *8 (E.D.N.Y. Oct. 20, 2011). "In order to make out the [adverse action] prong of a prima facie case of discrimination under the NYCHRL, a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty." *Williams v. Regus Mgmt. Group*, LLC, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011). In the hostile work environment context, there is no "severe or pervasive" requirement under the NYCHRL. *Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812 (CM) (JCF), 2015 U.S. Dist. LEXIS 43758, at *169 (S.D.N.Y. Mar. 27, 2015). "While courts may still dismiss 'truly insubstantial cases,' even a single comment may be actionable in the proper context." *Mihalik*, 715 F.3d at 113 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 & n.30). Because the Court concluded that there is sufficient evidence to allow a reasonable juror to conclude that Plaintiff experienced a hostile work environment under Title VII and NYSHRL, the Court finds that he has also met the lesser burden under the NYCHRL.

The NYCHRL imposes liability on the employer[3] for discriminatory acts of an employee

---

[3] Unlike under Title VII or the NYSHRL, individuals can be held directly liable under NYCHRL for creating a

three circumstances:

> (1) where the offending employee "exercised managerial or supervisory responsibility"…; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action"; and (3) where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent [it]."

*Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (N.Y. 2010) (citing N.Y.C Admin. Code § 8-107).

As discussed above, Defendant Aristy was not Plaintiff's manager or supervisor. Nor has

Plaintiff pointed to sufficient evidence in the record to raise a material issue of fact as to whether

the City either failed to address the gym incident once Plaintiff filed his EEO complaints or was

negligent in failing to prevent the incident in the first place. For these reasons, the City

Defendants are entitled to summary judgment on Plaintiff's NYCHRL hostile work environment

claim.

## 2. Retaliation

"[L]iability for retaliation under the NYCHRL is broader than under the companion

federal and state statutes, 'in that there is no requirement that the employee suffer a materially

adverse action.'" *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012), aff'd, 526

F. App'x 124 (2d Cir. 2013) (quoting *Pilgrim v. McGraw–Hill Cos.*, 599 F.Supp.2d 462, 469

(S.D.N.Y. 2009)). Given that Plaintiff has raised material issue of facts as to employer

retaliation under federal and state law, he has also met the broader NYCHRL retaliation

standard. City Defendants' request for summary judgment on Plaintiff's NYCHRL retaliation

claim is therefore denied. However, the same analysis applies to Plaintiff's retaliation claims

---

hostile work environment. *See Dillon v. Ned Mgmt.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) ("Section 8-107(1)(a) of NYCHRL makes it unlawful "for an employer or an employee or agent thereof" to create a hostile work environment.") (quoting N.Y.C. Admin. Code § 8-107(1)(a) (emphasis added)). However, Plaintiff has not brought a direct claim against Individual Defendants under this provision. *See Compl.* at 22–23.

against Individual Defendants under NYCHRL as under § 1983 and NYSHRL. Because Plaintiff has not alleged that Individual Defendants were personally involved in the post-complaint retaliatory acts, they are entitled to summary judgment on the NYCHRL retaliation claim, too.

### G. Aiding and Abetting Violations of NYSHRL and the NYCHRL

Under § 296 of the NYSHRL, it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" *Feingold*, 366 F.3d at 158 (quoting *Dunson v. Tri–Maintenance & Contractors, Inc.*, 171 F.Supp.2d 103, 113–114 (E.D.N.Y.2001)). Under these provisions, non-managerial co-workers can be held liable if they are found to have "actually participate[d] in the conduct giving rise to [the] discrimination." *Tomka*, 66 F.3d at 1317. In addition, "aiding and abetting is only a viable theory where an underlying violation has taken place." *Falchenberg v. New York State Dept. of Educ.*, 338 Fed. Appx. 11, 14 (2d Cir. 2009) (affirming dismissal of aiding and abetting claims when the underlying discrimination claim "fails on its merits").

As a preliminary matter, Plaintiff does not appear to have brought claims against the City under these provisions. *See* Compl. at 24–25; 27–28 (pleading aiding-and-abetting claims as against individual defendants). Because Defendants Nigro and Vreeland are entitled to qualified immunity, there are no remaining claims for aiding and abetting against City Defendants.

With respect to the Individual Defendants, the Court concludes that they are entitled to summary judgment on Plaintiff's claims of aiding and abetting retaliation under NYSHRL and

NYCHRL because Plaintiff has pointed to no evidence in the record to suggest that they were even indirectly involved in the retaliatory acts. *Cf. Feingold*, 366 F.3d at 157 (finding that only employees who "actually participate[d]" in the conduct giving rise to discrimination claims could be liable under § 296).

In contrast, there are triable issues of fact as to Individual Defendants' direct participation in the conduct giving rise to Plaintiff's NYCHRL hostile work environment claim. Viewing all evidence in the light most favorable to Plaintiff, a rational factfinder could conclude that Aristy's discriminatory assault and the surrounding circumstances caused an actionable hostile work environment for purposes of NYCHRL, and that Individual Defendants directly participated by aiding and abetting Aristy. If they are found to have assisted Aristy in violating the statute, they may be liable under § 8-107(6) of the NYCHRL. *See Dillon*, 85 F. Supp. 3d at 659 ("Although no bright line rule has been enunciated explaining how direct liability for the creation of a hostile work environment differs from aiding and abetting the creation of such a climate, case law suggests that plaintiffs may bring both types of claims against individual defendants who [are directly involved in the conduct]."). Ultimately, success on this claim would require Plaintiff to prove Aristy's underlying violation of the substantive NYCHRL provision[4] as well as Individual Defendants participation and assistance in that violation, but there are sufficient facts in the record for the Court to conclude that a rational jury could find both.

Individual Defendants argue that to establish aider and abettor liability under either NYSHRL or NYCHRL, a plaintiff must first establish liability as to the employer, which Plaintiff has not done here. *See* Dkt. No. 56 at 21. This Court disagrees as to aiding and abetting

---

[4] The Court is cognizant that Plaintiff has not brought a NYCHRL discrimination claim against any of the individual defendants, including Aristy. However, Defendants cite no case that suggests that the underlying violation must be *pleaded* as well as established.

discrimination under NYCHRL only. It is true that other courts applying New York law have assumed the requirement under both statutes. *See Baez v. Anne Fontaine USA, Inc.*, No. 14-CV-6621 (KBF), 2017 WL 57858, at \*5 (S.D.N.Y. Jan. 5, 2017) ("To establish aider and abettor liability [under NYCHRL], liability must first be established as to the employer.") (citing *Dillon*, 85 F.Supp.3d at 658); *see also Dillon*, 85 Supp. 3d at 658 ("'[B]efore an individual may be considered an aider and abettor [under NYCHRL],' liability 'must first be established as to the employer.'") (quoting *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F.Supp.2d 477, 490–91 (S.D.N.Y.1999)); *Sowemimo*, 43 F. Supp. 2d at 490–91 (citing *DeWitt*, 48 F. Supp. 2d at 293); *DeWitt*, 48 F. Supp. 2d 280 at 293 (citing *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2nd Dep't 1998)).

However, this line of cases relies on *Murphy*, a New York state case that found that for an aiding-and-abetting discrimination claim under NYSHRL, "[i]t is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting." 674 N.Y.S.2d at 417. The employer-liability requirement under NYSHRL follows from the necessity of establishing an underlying violation as a predicate for aiding-and-abetting, as NYSHRL only prohibits discriminatory practices by "employer[s]", not employee or agents. *Id.* Under NYCHRL, on the other hand, individual employees can be held directly liable for discrimination without any requirement that that illegal conduct be imputed to their employer. *See id.* (noting that under NYCHRL "employees" are directly liable for unlawful discriminatory practices, unlike under NYSHRL). Accordingly, employer liability is essential to establishing *any* predicate discrimination violation in the NYSHRL context, but not under NYCHRL. None of the cases cited by Moving Defendants address why a finding of co-worker liability for an underlying NYCHRL discrimination claim is an insufficient predicate for an

33

aiding and abetting discrimination claim, nor is there anything in the statutory language that compels such a limitation. *See* N.Y.C. Admin. Code Title 8, § 8-107(6) (providing that it is unlawful "[f]or any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter."). Accordingly, the Court concludes that Plaintiff can continue with his NYCHRL aiding and abetting claim against Individual Defendants at this stage.

## IV.    Conclusion

For the foregoing reasons, the City Defendants' motion for summary judgment is DENIED in part and GRANTED in part. Likewise, the Individual Defendants' motion for summary judgment is DENIED in part and GRANTED in part.

Specifically, the Court grants judgment in favor of the City of New York on Counts 1, 3, 8, 12, 16, 17, 18 and 19, and in favor of the Individual Defendants Counts 5, 9, 10, 12, 14, 15, 17, 18, and 19. The Clerk of the Court is directed to terminate Defendants Nigro and Vreeland.

Within two weeks of the date of this Order, the parties shall meet and confer regarding settlement, file a letter with the Court providing a status update, and propose dates for a scheduling conference.

This resolves Dkt. Nos. 55 and 58.


SO ORDERED.

Dated: March    , 2019
      New York, New York

                              ALISON J. NATHAN
                              United States District Judge